## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHIRLEY SLOCUM, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-12563** |
| **INTERNATIONAL PAPER COMPANY, ET AL.** | |
| **DERRICK SANDERS, ET AL.** | **NO. 16-12567** |
| **VERSUS** | |
| **INTERNATIONAL PAPER COMPANY, ET AL.** | |
| **BRENT JARRELL, ET AL.** | **NO. 16-13793** |
| **VERSUS** | |
| **INTERNATIONAL PAPER COMPANY, ET AL.** | **SECTION "L" (1)** |

## ORDER & REASONS

Before the Court is a motion seeking class certification. R. Doc. 182. The motion is opposed in part. R. Doc. 187. Plaintiffs have filed a reply. R. Doc. 203. On May 16, 2019, the Court heard oral argument on the motion. R. Doc. 205. The Court now rules as follows.

### I.    BACKGROUND

This series of class action cases arise out of injuries allegedly sustained by Plaintiffs as a result of a discharge of "black liquor" at the Bogalusa Paper Mill on June 10, 2015. R. Doc. 1-2 at 1. Plaintiffs assert claims against Defendant,[1] International Paper Company, for failure to provide

---

[1] Initially, Plaintiffs filed claims against the mill manager, Bernard F. Chascin; however, these claims were dismissed as they were not cognizable under Louisiana law.

complete and accurate information about the chemical composition and known risks presented by the black liquor that was allegedly discharged from a ruptured evaporator tank at the Bogalusa Paper Mill. R. Doc. 1-2 at 1. Plaintiffs' theories of liability sound in negligence, strict liability, and nuisance. R. Doc. 1-2 at 21.

Black liquor is a by-product of the paper making process. Black liquor is typically recycled in evaporator tanks for repeated use in the pulping process. R. Doc. 1-2 at 3. On June 10, 2015, the sight glass on an evaporator tank containing black liquor ruptured at the Bogalusa Paper Mill, resulting in a stream of black liquor erupting several feet into the air and dispersing into the atmosphere. R. Doc. 1-2 at 14. The next day, Defendants advised the media that there was a "slight leak" in a process unit that led to the dispersal of diluted black liquor, but that Defendants were "confident that there is no risk to human health or the environment." R. Doc. 1-2 at 14.

Plaintiffs disagree. They contend the dispersal of black liquor caused personal injury, property damage and/or emotional distress, and argue Defendants are liable for Plaintiffs' damages. R. Doc. 1-2 at 16. For example, the Welch Plaintiffs claim the dispersal caused a black mist to descend on their house, and that the mist stuck to the exposed skin of themselves and their children. R. Doc. 1-2 at 18. For a few days after, the Welches "experienced itchy, burning, watery eyes, [and] headaches with throat and upper respiratory irritation." R. Doc. 1-2 at 18. The Welches concede that their physical symptoms cleared "in a short period of time," but argue they continue to suffer emotional distress and fear about a reoccurrence of the event. R. Doc. 1-2 at 18. Other Plaintiffs claim similar damages.

## II.     PRESENT MOTION

On April 30, 2019, Plaintiffs moved to certify an issue class pursuant to Federal Rule of Civil Procedure 23(c)(4), contending that the determination of Defendant's liability for the June 10, 2015 explosion is most efficiently done on a class-wide basis. If Defendant is found liable,

Plaintiffs propose the remaining, Plaintiff-specific issues be tried in flights. R. Doc. 182-1 at 2.

Defendant opposes the motion in part, stating it "does not oppose class certification of those issues that are truly class-wide issues in this litigation." R. Doc. 187. Specifically, Defendants take issue with whether "general causation" may be tried on a class-wise basis.[2] *Id.* at 1. Defendant also proposes the Court certify an issue class. *Id.* at 9. It proposes the trial be bifurcated into two phases: liability and damages. *Id.* at 10.

## III.    LAW AND ANALYSIS

Class actions permit representative plaintiffs to litigate their claims on behalf of members of the class not before the court. The purpose of a class action is to avoid multiple actions and to allow claimants who could not otherwise litigate their claims individually to bring them as a class. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 (1983). A district court has great discretion in certifying and managing a class action. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citing *Montelongo v. Meese*, 803 F.2d 1341, 1351 (5th Cir. 1986). The party seeking class certification bears the burden of proving all the requirements set out in Rule 23 of the Federal Rules of Civil Procedure. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 n.4 (5th Cir. 2001).

Class certification is soundly within the district court's discretion, and this decision is essentially a factual inquiry; however, the Court's analysis generally should not reach the merits of the plaintiffs' claims. *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 502-03 (5th Cir. 2004); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996). The district court must make specific findings regarding how the case satisfies or fails to satisfy the requirements of Rule 23

---

[2] Defendant also took issue with the proposed class scope argued in Plaintiffs' motion. The Court held a status conference with the parties, stating that the geographic scope of black liquor plume will be established by the finder of fact, not the Court in its ruling on class certification.

of the Federal Rules of Civil Procedure. *Vizena*, 360 F.3d at 503.

In this case, Plaintiffs seek certification of the following class for purposes of determining Defendant's liability:

> All natural and juridical persons who sustained any loss or damages of any kind (including but not limited to property damages, personal injuries and emotional distress) arising in any way from or out of the discharges or releases of Black Liquor from the Bogalusa Paper Mill facility evaporator tank that ruptured on or about June 10, 2015 and thereafter as the result of malfunction evaporators prone to unpermitted releases and/or discharges of Black Liquor on people and property situated in close proximity to the Bogalusa Paper Mill.

R. Doc. 1-2 at 9.[3]

Plaintiffs seek certification under Rule 23(c)(4). R. Doc. 182-1 at 9. Rule 23(c)(4), "permits district courts to limit class treatment to 'particular issues' and reserve other issues for individual determination." *In re Deepwater Horizon*, 739 F.3d 790, 816 (5th Cir. 2014). This allows a court to "'adjudicate common class issues in the first phase and then later adjudicate individualized issues in other phases' of the multi-phase trial." *Id.* (quoting *Madison*, 637 F.3d at 556). The "particular issue" in this case is Defendant's liability. To certify an issue class, the

---

[3] Although Plaintiffs do not mention it in their motion seeking class certification, in their complaint, Plaintiffs also seek certification of several subclasses:

> 1. Individuals residing or otherwise situated in close proximity to the facility that sustained damage to movable and immovable property such as window frames, screens, siding, doors, shutters, storage buildings, lawn; furniture grills, and equipment, bicycles, children's toys, automobiles, motorcycles, vegetation, gardens and flower beds, shrubs, grass and trees and other items of property as the result of the discharge or release at issue
> 2. Individuals who sustained personal injuries from and/or exposure to Black Liquor as the result of physical contact or ingestion of the contaminant droplets and/or air containing the substances as the result of the discharge or release; and/or
> 3. Individuals who experienced and continue to experience emotional distress as the result of the discharge(s) or release(s) at issue and the conduct of defendants in failing to sufficiently advise the public and potentially injured individuals regarding the chemical composition of Black Liquor after the June 10, 2015 discharge and release which is known by the Class Members from personal experience with past release or discharges of Black Liquor to be a caustic and corrosive substance that causes damage to property, wildlife and burning of the skin and other exposed body parts.

*Id.* at 9–10.

Court must nevertheless conclude the class satisfies Rule 23(b)(3)'s requirements. *See Madison v. Chalmette Refining, L.L.C.*, 637 F.3d 551, 556 (5th Cir. 2011). Using these standards as a guide, the Court will now analyze whether it is proper for this case to proceed as a class with respect to the issue of liability.

### A. Class Certification

Plaintiffs seek certification of their claims as a class action under Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Rule 23 provides in relevant part:

> **(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
> **(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: ....
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Thus, read in combination, Rule 23(a) and 23(b)(3) provide six requirements which must be met for a group of claims to be certified as a class action—numerosity, commonality, typicality, adequacy, predominance, and superiority. The Court will address each requirement in turn.

### 1. Numerosity – Rule 23(a)(1)

To demonstrate numerosity, Plaintiffs must establish that joinder is impracticable through "some evidence or reasonable estimate of the number of purported class members." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000). While the number of members in a proposed

class is not determinative of this inquiry, the Fifth Circuit has cited with approval Professor Newberg's treatise, which "suggest[s] that any class consisting of more than forty member 'should raise a presumption that joinder is impracticable.'" *Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999). In this case, the proposed class consists of approximately 2500 individuals, far exceeding the forty-member presumptive threshold. Therefore, Plaintiffs are entitled to a presumption in their favor regarding the numerosity issue. Defendants have not offered any evidence to defeat this presumption.

### 2. Commonality – Rule 23(a)(2)

Rule 23(a)(2) requires that there be issues of law or fact common to the class. The commonality requirement is satisfied if at least one issue's resolution will affect all or a significant number of class members. *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001); *Mullen*, 186 F.3d at 625. Commonality, unlike predominance, is a very low threshold and can be met if the resolution of only one or more issues will affect a significant number of class members. *James*, 254 F.3d at 570.

In this case, each Plaintiff alleges Defendant's negligence lead to the explosion, thereby causing them damage. The alleged explosion is limited to a single incident—the explosion and subsequent disbursement of Black Liquor. Whether Defendant's negligence caused the explosion is a question common to all class members. Therefore, the Court concludes commonality is satisfied here with regard to the issue of liability.

### 3. Predominance – Rule 23(b)(3)

Rule 23(b)(3) requires that the class share common issues of law or fact that predominate over the questions affecting individual class members. In general, to predominate, common issues must form a significant part of individual cases. *Mullen*, 186 F.3d at 626. Specifically, a district court should consider how the cases would proceed to trial, that is, whether any cases

would require individual trials on particular issues. *See Castano,* 84 F.3d at 744–45 (finding certification was inappropriate where individual trials would be necessary to determine an element of the plaintiffs' fraud claims).

Compared to the commonality element of Rule 23, the predominance standard is much "more rigorous." *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006). When conducting the predominance analysis, the Court must examine each plaintiff's claims individually to determine how these claims would be tried. While class treatment of a mass tort case as a whole is inappropriate, it is "possible to satisfy the predominance . . . requirements of Rule 23(b)(3) in a mass tort or mass accident class action" despite the particular need in such cases for individualized damages calculations. *Exxon*, 461 F.3d at 603.

In this case, Plaintiffs move the Court to certify an issue class with respect to Defendant's liability. Plaintiffs bring claims based on: (1) Negligence, pursuant to Louisiana Civil Code Article 2315; (2) Nuisance, pursuant to Louisiana Civil Code Articles 667–69; (3) Negligence, pursuant to Louisiana Civil Code Article 2317 and 2317.1; and (4) equitable relief. Based on these causes of action, Plaintiffs seek damages for: (1) property damage; (2) personal injuries; (3) past pain and suffering; and (4) emotional injuries stemming from the alleged damage to their properties.[4] R. Doc. 1-1.

To ensure class treatment in the context of a mass tort is appropriate, the Fifth Circuit has instructed district courts to consider rigorously how they plan to "adjudicate common class issues in the first phase and then later adjudicate individualized issues in other phases" of the

---

[4] On November 4, 2016, the Court granted in part Defendant's motion to dismiss. R. Doc. 30. Among the dismissed claims was Plaintiffs' claims for emotional distress. *Id.* at 11. Notably, however, the Court did not dismiss claims Plaintiffs sustained emotional damages related to their property claims, as under Louisiana law, plaintiffs may recover emotional damages related to property claims when "the property was damaged by activities [that] amount to a continuous nuisance." *Id.* (quoting *Johnson v. Orleans Par. Sch. Bd.*, 2006-1223 (La. App. 4 Cir. 1/30/08), 975 So. 2d 698, 711, *writ denied*, 2008-0607 (La. 6/27/08)).

multi-phase trial before the final decision is made to certify a class. *Madison*, 637 F.3d at 556. To determine whether an issue class is appropriate in this case, the Court evaluates each of Plaintiffs' claims in turn.

### i. Negligence – Louisiana Civil Code article 2315

Plaintiffs' petition alleges Defendant's negligence lead to the June 10, 2015 explosion. In Louisiana, courts employ a duty-risk analysis to determine the potential negligence of a defendant. *Long v. State Dep't of Trans. & Dev.*, 916 So.2d 87, 101 (La. 2005). Generally, this analysis involves five separate elements: (1) proof that the defendant had a duty to conform its conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to that standard (the breach element); (3) proof that the defendant's conduct was cause-in-fact of plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's conduct was legal cause of plaintiff's injuries (the scope of liability element); and (5) proof of actual damages (the damages element). *Id.*

### a. Duty

Plaintiffs allege Defendant had a "duty to maintain, mitigate, monitor, inspect, remediate, and/otherwise prevent foreseeable hazardous conditions such as exposure of Plaintiffs and Class Members who are in close proximity to the mill and other similarly situated individuals." R. Doc. 1-1 at ¶ 71. Plaintiffs further allege that "[a]t all times relevant hereto both prior to and since June 10, 2015, Defendants had an affirmative duty to protect the Plaintiffs, Class Members and the public as well as its neighbors who reside or are otherwise situated in close proximity .to the Bogalusa Paper Mill, and negligently failed to do so." *Id.* at ¶ 72. Plaintiffs allege Defendant owed them a duty, and Plaintiffs' allegations make clear that the duty the allege Defendant owed each of them is of the same nature. *See Samuel v. United Health Servs.*, No. 06–7234, 2010 WL 2428107, at *6–7 (E.D. La. June 4, 2010) (noting that class certification was inappropriate, in

part, because the duty the defendant hospital "owed to a patient clearly varie[d] in each case depending on the specific needs of that patient"). Thus, whether Defendant owed Plaintiffs a duty of care and the level of that duty are issues that predominate over individualized inquiries.

### b. Breach

In *Samuel v. United Health Services*, the plaintiffs sought to certify the following class:

> All persons who sustained injury and/or damage, including but not limited to, personal injury or wrongful death, as a result of unreasonably dangerous conditions and/or defects in and/or on the premises of UHS on or about August 29, 2005, and/or as a result of the failure of UHS to attain, maintain, and/or provide an adequate means of transportation to timely and/or safely move persons off its premises in the wake of Hurricane Katrina.

2010 WL 2428107, at *3. The Court denied the motion, concluding that the issue of breach did not predominate in that case. As the Court explained,

> Each backup generator was positioned differently, and had a different ability to withstand the Hurricane, as evidenced by the fact that each generator was rendered non-functional for a different period of time. Whether the Defendants breached a duty to a plaintiff would depend on the decisions that they made regarding the specific generator that was designed to provide power to the wing in which he or she was located. The Court therefore clearly could not resolve this issue on a universal basis, but would instead have to conduct individual trials for at least all of the members of the patient subclass.

*Id.* at *8.

Unlike *Samuel*, in this case, Plaintiffs allege a single ruptured evaporator tank caused the discharge of black liquor. R. Doc. 1-2 at 1. Thus, a determination of whether Defendant breached the duty it owed to Plaintiffs requires the Court to evaluate Defendant's conduct with respect to a single evaporator tank. As a result, the Court concludes this issue predominates over individualized inquiries.

### c. Causation

The Fifth Circuit has viewed causation, and medical causation in particular, as a significant barrier to a finding of predominance. *See Exxon*, 461 F.3d at 603. In *Exxon*, which

also concerned a single incident—a smoke plume caused by an oil fire at a chemical plant—the Court recognized that different individuals would have been affected by the smoke plume in different ways. As the Court explained:

> [T]he causal mechanism for plaintiff's injuries—alleged exposure or fear of exposure to toxic substances—is not so straightforward. While it is certainly true that the cause of the fire itself is an issue common to the class, each individual plaintiff must meet his or her own burden of medical causation, which in turn will depend on any number of the factors enumerated by the experts who testified at the class certification hearing.

*Id.* Thus, where the plaintiffs in a proposed class action allege a variety of injuries as opposed to injuries of a single type, the individualized determinations necessary to prove causation will preclude a finding of predominance with respect to specific medical causation.

In this case, Plaintiffs allege a vast array of injuries. Some Plaintiffs have claims for property damage. Others have claims for emotional distress in connection with their alleged property damage. Still others have claims for personal injury. Moreover, each plaintiff comes to the table with different pre-existing conditions and were presumably affected by the black liquor in different ways. Finally, whether the black liquor caused a plaintiff's property damage, physical injury, or emotional distress requires an individualized evaluation of his or her claim. Therefore, common issues cannot be said to predominate over the issue of medical causation, and these issues must be dealt with during another phase of this litigation.

With respect to general causation, however, the issues of: (1) whether Defendant's negligence caused the incident, (2) what the chemical composition of black liquor is, and (3) whether black liquor has the potential to cause the kinds of damages of which Plaintiffs complain do predominate.

### d.  Damages

Finally, the Court need not spend a great deal of time discussing the damages in this case.

It is sufficient to recognize the varied nature of the damages claimed by different proposed plaintiffs. This is not a case like *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597 (E.D. La. 2006), in which all plaintiffs' claims were limited to property damage. Clearly, the damages analysis for a Plaintiff claiming property damage will be significantly different than it would be for a plaintiff who asserts she suffered physical injuries or emotional distress. Thus, the damages inquiry is riddled with questions that are unique to each Plaintiff. Thus, with respect to damages, common questions cannot be said to predominate, and these issues must be resolved by individual trials in another phase of this litigation, as more fully explained in section B of this order.

### ii.      Nuisance -- Louisiana Civil Code Articles 667–69

Under Louisiana Civil Code article 667, a property owner may not do any "work" that deprives his neighbors of enjoying their own properties. La. Civ. Code art. 667. Article 668 provides that while property owners can use their land as they please, they cannot "make any work" which would damage their neighbor's buildings. La. Civ. Code art. 668. Further, if works or operations cause inconvenience to neighboring houses "by diffusing smoke or nauseous smell," courts should look to local custom to determine if the activity is a nuisance. La. Civ. Code art. 669. Whether or not an activity constitutes nuisance is a question of fact, to be determined based on the particular circumstances of each case. *See Schulker v. Roberson*, 91-1228 (La. App. 3 Cir. 6/5/96), 676 So. 2d 684, 688.

Here, Plaintiffs allege Defendant was engaged in "work" at its paper plant, which caused a release of a noxious substance into the air. This release allegedly deprived individuals living in close proximity to the plant of the right to enjoy their own property. This claim does not require the Court to evaluate any individual Plaintiff's conduct; thus whether Defendants are liable for alleged violations Louisiana Civil Code Articles 667–69 is a question that predominates over

individualized claims.

### iii.     Negligence - Louisiana Civil Code Article 2317 and 2317.1

Plaintiffs allege the incident occurred because of a defect in the evaporators at the paper mill, which were under the care and custody of the Defendant. Louisiana Article 2317 provides that the custodian of a thing is responsible for damages caused by defects in the thing, provided he knew or should have known about the defect. La. Civ. Code arts. 2317, 2317.1. To prevail on such a claim, Plaintiffs bear the burden of proving: (1) the property that caused the damage was in the "custody" of the defendant; (2) the property had a condition that created an unreasonable risk of harm to persons on the premises; (3) the unreasonably dangerous condition was a cause-in-fact of the resulting injury; and (4) the defendant had actual or constructive knowledge of the risk. La. Civ. Code arts. 2317.1, 2322; *Vinccinelli v. Musso*, 2001-0557 (La. App. 1 Cir. 2/27/02); 818 So. 2d 163, 165, cited in *Wiggins v. United States*, 2009 WL2176043, * 3 (E.D. La. 2009).

Here, Plaintiffs allege: (1) Defendant had custody of the Bogalusa Paper Mill, (2) the emission of black liquor created an unreasonably dangerous risk of harm, (3) the emission of black liquor resulted in Plaintiffs injuries, and (4) Defendant had actual knowledge of this risk. The evaluation of this claim does not require the Court to evaluate individual Plaintiffs' conduct or injuries to determine Defendant's liability. Accordingly, the Court concludes the issue of whether Defendant violation Louisiana Civil Code Article 2317 and 2317.1 is a question that predominates over individualized issues.

### 1.     Equitable Relief

Plaintiffs also make the following claims for equitable relief:

1. A judgment that International Paper intentionally misrepresented the nature of the release to the public and governmental agencies;
2. Injunctive relief requiring International Paper to disclose additional information

regarding this incident and black liquor in general; and

3. Injunctive relief requiring International Paper to develop and release a response and remediation plan regarding the incident and a preparedness plan for any future accidents.

The declaratory relief Plaintiffs seek does not require a specific causation or damages assessment; rather, the declarations Plaintiffs seek would require the fact finder to make findings based on general causation that predominates over Plaintiffs' claims. Therefore, the Court finds issues surrounding Plaintiffs' claims for equitable relief predominate over this claim as a whole.

## 1. Typicality – Rule 23(a)(3)

Rule 23(a)(3) requires that the claims of the class representatives are typical of the class's claims or defenses. Again, the threshold for typicality is low: class representatives must show similarity between their legal and remedial theories and the theories of the rest of the class. *Mullen*, 186 F.3d at 625. Typicality does not require that the claims of the class are identical, but rather that they share the same essential characteristics—a similar course of conduct, or the same legal theory. *James*, 254 F.3d at 571 (quoting 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000)).

Plaintiffs have identified six class representatives— Brent Jarrell, Elizabeth Simmons, Linda Nunnery, Willie Bickham, and Herbert Angel—all of whom allege either property damage and/or personal injury and/or nuisance as a result of the release of black liquor from the Mill. The theories of liability among the Plaintiffs and potential class members are alike: they are suing for negligence, nuisance, and strict liability pursuant to Louisiana Civil Code articles 2315, 2317, 2317.1 and 667-669. Additionally, these Plaintiffs' claims share essential characteristics in this case, as they are based upon the same event. Accordingly, the Court concludes these class members are representative of the class' claims as a whole.

## 2. Adequacy – Rule 23(a)(4)

Rule 23(a)(4) demands that the named class representatives fairly and adequately represent the claims of the other class members. There can be differences between the position of class representatives and other class members so long as these differences do not "create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen*, 186 F.3d at 626. A district court should evaluate whether the class representatives have a sufficient stake in the outcome of the litigation, and whether the class representatives have interests antagonistic to the unnamed class members. *Id.* (citing *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1972)). In addition, the district court should inquire into the zeal and competence of the class representatives' counsel and into the class representatives' willingness to take an active role in the litigation and to protect the interests of absentees. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001).

The proposed class representatives in this case do not appear to have interests that would be counter to those of other plaintiffs in this matter. There do not appear to be any foreseeable conflicts that might arise between the proposed class representatives and other proposed class members. Rather, the interests of the class members appear to be sufficiently aligned, even though some differences exist regarding the specifics of each plaintiff's claim. Moreover, the proposed class representatives have each executed an affidavit stating they have no conflict of interest in this matter and would will be willing to actively participate on behalf of other Class Members should he be named as a class representative.

Additionally, counsel for the class representatives have all filed affidavits stating they have the financial resources, experience, and desire to adequately represent the class. These affidavits satisfy the Court that counsel are committed to these cases and will litigate them zealously. The Court finds that the class representatives could fairly and adequately represent a

proposed class of plaintiffs in this matter under Rule 23(a)(4).

### 3. Superiority – Rule 23(b)(3)

Under Rule 23(b)(3), a district court must evaluate four factors to determine whether the class action format is superior to other methods of adjudication: the class members' interest in individually controlling their separate actions, the extent and nature of existing litigation by class members concerning the same claims, the desirability of concentrating the litigation in the particular forum, and the likely difficulties in class management.[5] The Fifth Circuit has noted that there is an important relationship between the superiority analysis and the predominance analysis. *Exxon*, 461 F.3d at 604. Where common issues do not predominate, any effort to conduct a class action "would denigrate in practice into multiple lawsuits separately tried." *Id.* (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's notes).

In this case, Plaintiffs argue that the class action is a superior format of adjudication because it will minimize the risk of non-uniformity of results and maximize judicial efficiency. As Plaintiffs point out, as the vast majority of claimants in this litigation are from low-income areas surrounding the Paper Mill, it would be nearly impossible for them to obtain individual representation to litigate their claims. Thus, the first factor—the class members' interest in individually controlling their separate actions—weighs in favor of finding class action as the superior method of adjudication. Moreover, there are no other cases pending with respect to the subject incident, the paper mill and the affected areas are situated in the Eastern District, and

---

[5]     The Fifth Circuit in *Castano* advised that a district court's superiority analysis should include consideration of the negative impact upon a defendant of certification of a mass tort. 84 F.3d at 746. The court noted that class certification magnifies unmeritorious claims, increases plaintiffs' damage awards, and creates "insurmountable pressure" upon defendants to settle - all of which could be tantamount to "judicial blackmail." *Id.* In this case, Defendant might benefit from class certification, as it offers finality to their liability for the explosion—because this case, a proposed class action, has been pending since 2016, potential class members' claims have been tolled for purposes of the statute of limitations. These claims will continue to be tolled until the Court rules on the class certification issue.

Plaintiffs' counsel has been managing this case, which already has a significant number of Plaintiffs, for three years. These factors also militate in favor of finding class action the superior method of adjudication. For these reasons, the Court finds that the superiority requirement of Rule 23(b)(3) has been met.

## B. Trial plan

Based on the foregoing the Court now determines the most efficient means by which to try these issues. Although the analysis of International Paper's liability gives rise to numerous common questions, the class members' specific causation and damage calculations give rise primarily to individual questions that are not capable of class-wide resolution. Thus, the Court concludes the best format would be to try the case in two phases.[6] *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed."). Accordingly, the Court will certify an issue class to determine Defendant's liability. *See Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003) (stating that, "[e]ven wide disparity among class members as to the amount of damages" does not preclude class certification "and courts, therefore, [may] certify[y] classes even in light of the need for individualized calculations of damages).

During Phase One, Plaintiffs shall proceed as a class defined as

All persons or entities who were physically present or owned property within Bogalusa, Louisiana, Parish of Washington on June 10, 2015, and who sustained injuries or damages as a result of the discharge of "black liquor" at the Bogalusa

---

[6] Although, the Fifth Circuit warned that "historically, class certification of mass torts has been disfavored," 84 *Castano*, F.3d at 746, the U.S. Supreme Court has more recently held that mass tort cases can be certified under Rule 23. *Amche m Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997) ("Even mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement . . . . [However, courts should exercise] caution when individual stakes are high and disparities among class members great.")

Paper Mill owned by the International Paper Company.

This phase shall consist of all issues related to Defendants' liability. This includes Plaintiffs nuisance, negligence, strict liability claims, as well as Plaintiffs' request for equitable relief. The specific legal issues to be decided in Phase One include, but are not necessarily limited to:

1. Whether Defendants owed Plaintiffs a general duty.
2. Whether Defendants' conduct failed to conform to the general standard of care.
3. Whether the scope of Defendants' duty includes preventing the type of harm Plaintiffs allegedly suffered.
4. Whether Defendant had *garde* of the evaporator when the rupture occurred on June 10, 2015.
5. Whether Defendant knew, or should have known, of the ruin, vice or defect in the evaporator dome sight glass that broke on the evening of June 10, 2015.
6. Whether Defendant failed to exercise reasonable care in maintaining the evaporator dome sight glass that broke on the evening of June 10, 2015.
7. Whether Defendant had discovered the unsafe condition prior to the incident.
8. Assuming Defendant had discovered the unsafe condition prior to the incident, whether Defendant warned potential victims of its existence.
9. Whether the incident arose out of work at the Mill.
10. Whether Defendant failed to exercise reasonable care in performing its work at the Mill.

During this phase, the finder of fact will also make a determination with respect to the geographic scope of the plume radius as well as other factual determinations related to Plaintiffs' request for equitable relief, such as:

1. The times the release of black liquor on June 10, 2015 began and ended.
2. The total amount of black liquor released through the broken evaporator dome sight glass and into the atmosphere and, separately, the area outside the Mill on June 10, 2015.
3. The constituents of the black liquor released through the broken evaporator dome sight glass on June 10, 2015 and Defendant's knowledge related to the constituents of black liquor on that date; including what knowledge Defendant had regarding the potential hazards presented by the chemical substances released into the atmosphere from its Bogalusa Paper Mill on June 10, 2015 and when it acquired such knowledge, if ever.
4. Whether black liquor is a harmful substance that can cause physical harm and/or property damage of the type alleged by Plaintiffs.
5. The density of the black liquor released through the broken evaporator dome sight glass on June 10, 2015.

6. The wind direction and other relevant weather conditions during the incident and for time periods otherwise relevant to the litigation.
7. Thea area where the black liquor released on June 10, 2015 was deposited.
8. The black liquor deposition levels within the area affected by the June 10, 2015 incident.
9. Whether Defendant intentionally misrepresented the nature of the release to the public and governmental agencies.
10. Whether Defendant should be required to disclose additional information regarding this incident and black liquor in general.
11. Whether Defendant should be required to develop and release a response and remediation plan regarding the incident and a preparedness plan for any future accidents.

Assuming the finder of fact finds in favor of Plaintiffs in Phase One, the Court would then proceed to Phase Two. Phase Two shall consist of various trial flights of groups of five Plaintiffs with like claims to determine specific causation and to award damages, if any. *See Mullen*, 186 F.3d at 623; *Watson v. Shell Oil Co.*, 979 F.2d 1014, 1018 (5th Cir. 1992). Many of the findings made in Phase One will likely limit the number of Plaintiffs' claims to be adjudicated in Phase Two—for example, some Plaintiffs may fall outside of the geographic scope established by the fact finder in Phase One.

The Court notes the "the nearly insurmountable problems of balancing procedural fairness with judicial efficiency in the management of mass tort litigation" such as this. *Watson*, 979 F.2d at 1018. As the U.S. Supreme Court required in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997), however, proceeding as a class with respect to Phase One and moving on to Phase Two for individualized adjudications "achieve[s] economies of time, effort, and expense, and promote[s] . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results," thereby satisfying Rule 23(b)(3).

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Motion to certify a class, R. Doc. 182, is **GRANTED**.

**IT IS FURTHER ORDERED** that Shawn C. Reed and Jonathan C. Pedersen be and hereby are **APPOINTED** as Co-Lead Class Counsel and Co-Lead Liaison Counsel.

**IT IS FURTHER ORDERED** that a Plaintiffs' Steering Committee, comprised of Shawn C. Reed; Jonathan C. Pedersen; D. Douglas Howard, Jr.; William H. Arata; and Thomas M. Discon be and hereby is **ESTABLISHED**.

**IT IS FURTHER ORDERED** that Plaintiffs' provide the Court with a proposed notice by no later than Monday, May 27, 2019. Defendant may file its objection thereto, if any, by no later than Monday, June 3, 2019.

New Orleans, Louisiana, this 21st day of May, 2019.

UNITED STATES DISTRICT JUDGE